IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Petitioner,                                                   Misc. No.

v.

CROSS SENIOR CARE INC., LLC,

    Respondent.
_____/

**PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND**
**AND MEMORANDUM OF LAW**

The United States of America respectfully petitions to enforce Civil Investigative Demand No. 17-775, which the United States issued to Cross Senior Care Inc., LLC ("Cross Senior Care" or "the company"). The Civil Investigative Demand ("CID") seeks documents as part of an ongoing investigation into whether Cross Senior Care knowingly submitted, or caused to be submitted, false claims to federal healthcare programs for skilled nursing and rehabilitation services that were not reasonable and necessary, in violation of the False Claims Act ("FCA"). 31 U.S.C. § 3729 *et seq.*

On December 12, 2017, the United States served Cross Senior Care, through counsel, with CID No. 17-775. The CID was properly issued and seeks information relevant to a pending false claims investigation within the authority of the Department of Justice ("DOJ"). Although Cross Senior Care has produced some documents in response to the CID, the company has refused to produce over 3,000 documents in its possession that are responsive to the CID and relevant to the United States' investigation.

Notably, Request No. 21 in the CID required production of all communications from three high-level executives at Cross Senior Care. Cross Senior Care raised no initial objections

1

to the request. Nearly five months after the issuance of the CID, however, the company's counsel informed the United States that it was withholding approximately 3,400 out of 4,500 emails and an unknown number of text messages based on Cross Senior Care's unilateral determination that the remaining documents were not "relevant" to the United States' investigation. Counsel for the United States provided (1) a detailed explanation of the relevance standard governing CIDs and (2) fifteen examples of why the requested communications were relevant to the United States' investigation. The United States further agreed that "purely personal" communications, to the extent they existed, need not be produced. Despite conceding that the provided list of relevant areas of inquiry covered nearly all the requested communications, Cross Senior Care refuses to produce the responsive, non-privileged communications in its possession. The company's refusal is based on a unilateral and inappropriately narrow view of what information is "relevant" to the United States' investigation.

Because these emails and text messages are responsive to a properly issued CID and relevant to the United States' investigation, this Court should order Cross Senior Care to comply with the CID and produce all non-privileged communications responsive to Request No. 21 in CID No. 17-775.

**Jurisdiction and Venue**

1. The Court has subject-matter jurisdiction over this petition under 28 U.S.C. §§ 1331, 1345, and 31 U.S.C. §§ 3733(j)(1) and (j)(5), which provides that the United States may file a petition to enforce a Civil Investigative Demand with which the recipient has failed to comply.

2. Venue is proper in this district under 31 U.S.C. § 3733(j)(1) because Cross Senior Care transacts business at facilities located within the Middle District of Florida.

## Parties

3. The petitioner is the United States of America.

4. The respondent is Cross Senior Care, a chain of skilled nursing facilities that was founded and is still owned and controlled by Karl Cross. The umbrella of Cross Senior Care covers the following chain of skilled nursing facilities (together, the "Cross facilities"): Cross Pointe Care Center (Dania Beach, Florida); Cross Terrace (Dunedin, Florida); Cross Landings (Monticello, Florida); The Crossings (Lake Worth, Florida); The Crossroads (Davenport, Florida); Crosswinds (Greenville, Florida); Crossbreeze Care Center (Sarasota, Florida); Cross Care Center (Jacksonville, Florida); and Cross Garden Care Center (Miami, Florida).

## Issuance and Service of the CID

5. The FCA is the government's primary tool to recover losses resulting from fraud. *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). The FCA imposes statutory damages and civil penalties for knowingly submitting, or causing to be submitted, false or fraudulent claims for payment or approval to the government. 31 U.S.C. § 3729(a)(1)(A).

6. The DOJ is responsible for investigating violations of the FCA. 31 U.S.C. § 3730(a).

7. In 2016, the DOJ began an FCA investigation, within the meaning of 31 U.S.C. § 3733, concerning allegations that Cross Senior Care, through various related entities, billed federal healthcare programs for skilled nursing and rehabilitation services that were not reasonable and necessary.

8.  Section 3733 of the FCA empowers the Attorney General or a designee, "before commencing a civil proceeding under § 3730(a) or other false claims law," to issue a CID upon any person or entity who may be in possession, custody, or control of information "relevant to a false claims act investigation." 31 U.S.C. § 3733(a)(1). The recipient must then produce that information in the form of documents, answers to written interrogatories, or oral testimony. *Id*.

9.  On December 6, 2017, Michael D. Granston, Director, Commercial Litigation Branch, Fraud Section, executed CID No. 17-775, under his authority as the Attorney General's designee. *See id.*; Civil Division Directive No. 1-15. Counsel for Cross Senior Care accepted service on December 13, 2017.[1] A copy of CID No. 17-775 is attached as Exhibit 1.

10. Where the recipient fails to comply with the CID, the Attorney General may petition for enforcement of the CID in any district where the recipient resides, is found, or transacts business. 31 U.S.C. § 3733(j)(1).

### Cross Senior Care's Noncompliance

11. The CID contained twenty-two document requests that, collectively, required the company to produce corporate documents relating to the structure, ownership, control, and staffing of the Cross facilities; patient treatment; various metrics used to measure and track patient intake, treatment, length of stays, and discharge; billing and reimbursement; relationships with third-party service providers; employee training and guidance; compensation and incentives; performance reviews; complaints and other problems identified internally or by

---

[1] At the same time, the DOJ issued and served CID No. 17-779 on Karl Cross in his individual capacity. *See* Ex. 2 (CID No. 17-779). Mr. Cross is represented by the same counsel as Cross Senior Care. This enforcement action concerns only CID No. 17-775 that was issued to Cross Senior Care. Counsel has asserted that Mr. Cross has no documents in his possession, custody, or control that are responsive to the CID to Mr. Cross.

outsiders; comparisons between individual Cross facilities; and the company's document retention policy. *See* Ex. 1, Attachment C.  The CID defined the term "document" as encompassing "any and all writings and recorded material in any form," including "text/SMS messages . . . [and] electronic mail." Ex. 1, Attachment A.  Aside from Request No. 21 (discussed below), the document requests were not limited by author, recipient, or custodian.  In other words, the CID required the company to produce all documents—including business emails and text messages—of all company employees and executives relating to the subject of each request.[2]

12. Request No. 21 of the CID specifically required production of the corporate emails and business-related text messages of Karl Cross, Joyce Plourde, and Margaret Fernandez, three individuals whom the investigation has identified as control persons at the company.[3]  *See* Ex. 1, Attachment C.  Together, the three are believed to serve as the company's "nerve center," responsible for most important decisions at Cross facilities.  While many of their corporate emails likely would have been produced in response to the CID's other document

---

[2] Since the issuance of the CID, counsel for the United States has worked with counsel for Cross Senior Care to develop a list of custodians, as well as search terms, to assist with the production of responsive documents to the remainder of the CID.

[3] Karl Cross is the founder, owner, and chief executive of Cross Senior Care who maintains ultimate authority at the company and its facilities.  Joyce Plourde is the administrator of Cross Pointe Care Center, The Crossing, Cross Gardens Care Center, and Cross Care Center and is responsible for the day to day operations and administration of those facilities; Plourde is also the sole manager and registered agent of nine LLCs affiliated with the Cross facilities.  Margaret Fernandez was the Chief Financial Officer for Cross Senior Care during the relevant period but is believed to have since stepped down.  (The CID requested emails for "Margaret Hernandez," an error resulting from confusion with another Cross facilities employee, Maria Hernandez.  The company has correctly produced some emails for Margaret Fernandez.)

requests, the United States sought their business correspondence as a standalone request to emphasize their importance and ensure that no question existed as to their relevance to the investigation—precisely the situation before the Court now.

13. After accepting service of the CID in December 2017, counsel for Cross Senior Care did not object to any of the document requests. Counsel for the company and the United States engaged in discussions regarding requests about which the company believed that it had no responsive documents, as well as the prioritization and formatting of the document production.

14. At the end of April 2018, counsel for Cross Senior Care indicated that they had collected approximately 4,500 emails for the three custodians listed in Request No. 21. *See* Ex. 3 (April 30, 2018 email from A. Ittleman to J. Bloor). When Cross Senior Care produced the emails on May 11, 2018, however, the production contained only approximately 840 emails. Ex. 4 (June 6, 2018 email from J. Bloor to A. Ittleman). After reviewing the production, counsel for the United States inquired about the remaining 3,400 emails (and an unknown number of text messages). *Id.* Counsel for the company responded that they had produced "responsive, non-privileged emails" from the three custodians and that they would be producing a privilege log. *See* Ex. 5 (June 12, 2018 email from A. Ittleman to J. Bloor). Counsel for the company also asserted that they had identified text messages but "none were responsive to the CID." *Id.*

15. Counsel for the United States requested clarification concerning the volume of documents that Cross Senior Care contended were privileged. *See* Ex. 6 (June 12, 2018 email

from S. Arni to A. Ittleman).[4] Counsel for the company responded with a privilege log showing that only 260 documents had been withheld for privilege and contended that the remaining documents were not "relevant or responsive." *See* Ex. 7 (June 13, 2018 email from A. Ittleman to S. Arni)

16. In response, counsel for the United States again explained that the request sought all non-privileged communications from the three custodians, so any non-privileged documents in the company's possession were responsive to Request No. 21. *See* Ex. 8 (June 13, 2018 email from J. Bloor to A. Ittleman). The DOJ requested production of the remaining communications, which had already been collected, processed, and reviewed by June 15, 2018. *Id.*

17. Counsel for Cross Senior Care responded by asserting to not understand the request for "all emails." *See* Ex. 9 (June 14, 2018 email from A. Ittleman to J. Bloor). Counsel again asserted that the company believed it had produced "all responsive and relevant" materials, while indicating that the production had been limited to communications specifically addressing Medicare. *Id.* Counsel for the United States again explained that, pursuant to the request, all non-privileged communications were responsive and further noted that the individuals were selected because of their high-level positions with the company. *See* Ex. 10 (June 14, 2018 email from J. Bloor to A. Ittleman). The DOJ repeated its request for immediate production of the non-produced communications. *Id.*

18. On June 15, 2018, nearly six months after the issuance of the CID, counsel for the company asserted for the first time that the documents that it had unilaterally deemed

---

[4] Counsel for the United States also reiterated that the DOJ had never agreed to limit production to the three custodians named in Request No. 21. *Id.*

"irrelevant" were "protected from disclosure" by 31 U.S.C. § 3733(b).  *See* Ex. 11 (June 15, 2018 email from A. Ittleman to J. Bloor).  Counsel for the United States explained that the provision relied on by the company addressed documents protected from disclosure—*e.g.*, privileged documents—and did not speak to relevance.  *See* Ex. 12 (July 19, 2018 email from S. Arni to A. Ittleman).  The United States further explained that Courts have consistently held that DOJ has latitude to determine whether requested information is relevant to its investigation—a court will enforce a CID unless the demand is plainly incompetent or irrelevant to any lawful purpose.  *Id.*  Counsel again refused to produce the requested documents.  *See* Ex. 13 (July 25, 2018 email from A. Ittleman to S. Arni).

19.     Counsel for the United States responded by providing an explanation of the relevance standards for CID requests, including case citations.  *See* Ex. 14 (August 3, 2018 email from J. Bloor to A. Ittleman).  In response, counsel for Cross Senior Care provided citations to numerous cases addressing relevance under Rule 26 of the Federal Rules of Civil Procedure.  Ex. 15 (August 10, 2018 email from A. Ittleman to J. Bloor).  Counsel also stated that they had determined that only documents relating to Medicare were relevant to the CID.  *Id.*

20.     Counsel for the United States reiterated that the requested communications from the three custodians were highly relevant to the DOJ's investigation of Cross Senior Care.  *See* Ex. 16 (August 24, 2018 email from J. Bloor to A. Ittleman).  Further, counsel explained that, on the face of the CID, the investigation was not limited to Medicare, but instead encompassed all federal healthcare programs.  *Id.*; *see also* Ex. 1.  In addition, the United States provided a list of fifteen specific categories of information outside the narrow band of relevance asserted by Cross Senior Care that were relevant to its investigation, including determining which individuals

exercise control over decision-making for the Cross facilities.[5]  *See* Ex. 16.  Some of these fifteen categories overlapped with the subjects of the CID's other twenty-one document requests—to which the company has never objected and which should have encompassed the emails of the three executives at issue here.  *Cf.* Ex. 1, Attachment C.  Moreover, in the interest of compromise and based on concerns raised by the company's counsel, the United States agreed that Cross Senior Care need not produce communications involving the three listed custodians that were "purely personal" in nature.  *See* Ex. 16.

21.     Counsel for Cross Senior Care dismissed the explanation of areas of relevant investigation as "fifteen requests for production that have the very same consequence, i.e., they effectively require us to produce all emails from the three named custodians."[6]  Ex. 17 (August 30, 2018 email from A. Ittleman to J. Bloor).  He also again asserted that the investigation was limited to Medicare, rendering irrelevant documents related to any other federal program.  *Id.*  Reiterating that the company would not produce the approximately 3,400 remaining emails,

---

[5] The categories of potential relevant inquiry included discussions of the ownership, management, and organization of Cross Senior Care and its related entities; correspondence identifying specific patients and their treatment, as well as practices related to the intake, treatment, and discharge of patients more generally; correspondence about billing practices; audits of and complaints regarding patient care at the Cross facilities; discussion of both government healthcare programs and private insurance plans so that investigators could determine whether public beneficiaries were treated differently than those with private insurance plans; correspondence regarding the business operations, employment practices, and financial performance of the Cross facilities; the company's document retention policy; and communications about the specific roles that Cross, Plourde, and Fernandez fill at Cross Senior Care and its related entities.

[6] This response from counsel for Cross Senior Care buttresses the United States' position on relevance and demonstrates why Request No. 21 sought all communications from these essential custodians.

which it deemed "extraneous materials," counsel again asserted that the Federal Rules of Civil Procedures protected these non-privileged documents from disclosure. *Id.*

22. Having exhausted its efforts to compromise in the eleven months since serving the CID, the United States now files this petition requesting that this Court order Cross Senior Care to produce all non-privileged (and not "purely personal") communications involving Karl Cross, Joyce Plourde, and Margaret Fernandez pursuant to Request No. 21 of CID No. 17-775.

## Memorandum of Law

### A. CID No. 17-775 is a proper and appropriate exercise of the authority conferred on the DOJ by Congress

The DOJ is the agency of the United States responsible for enforcing the provisions of the FCA. 31 U.S.C. § 3730(a). The FCA specifically authorizes the Attorney General of the United States to issue CIDs to any person who may be in possession, custody, or control of information "relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). The Attorney General has delegated the authority to issue CIDs to the Director of the Commercial Litigation Branch, Fraud Section. Civil Division Directive No. 1-15. Pursuant to this delegation, CID No. 17-775 was issued by Michael D. Granston on December 6, 2017.

### B. The United States possesses broad power to investigate potential violations of the FCA

The DOJ possesses broad investigatory powers to determine whether a violation of the FCA has occurred, and a CID requesting documents is one such means of obtaining the necessary information. Cross Senior Care's assertion of a narrow relevance standard has no basis in case law and is contrary to the purposes of the FCA's CID provisions. Courts exhibit considerable deference to agency subpoenas, recognizing their importance to the executive branch's constitutional mandate to investigate violations of federal law and will decline to

enforce an administrative subpoena only where it bears no relation to a lawful purpose of the requesting agency.

> 1. Civil investigative demands, like other administrative subpoenas, serve the government's expansive "power of inquiry" in enforcing federal law

As the United States Supreme Court has explained, administrative agencies, including the DOJ, possess broad investigatory powers:

> Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950). The Eleventh Circuit has similarly recognized "the broad investigatory power of administrative subpoenas." *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622 (11th Cir. 1994) (quoting *Morton Salt*, 338 U.S. at 642-43).

An FCA CID is a type of administrative subpoena that allows the DOJ "to investigate whether there is a basis for remedying a false claim made against the United States." *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995). "Although Congress has chosen to call this subpoena by another name, a false claims CID is, at its essence, a subpoena issued by an administrative agency." *Id.* Courts have emphasized both the DOJ's law-enforcement mission and the importance of CIDs in fulfilling it. *See*, *e.g.*, *Markwood*, 48 F.3d at 979 ("Congress intended the false claims CID to provide the Department of Justice with a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested,

whether grounds exist for initiating a false claim suit."); *United States v. Witmer*, 835 F. Supp. 208, 211 (M.D. Pa. 1993), *aff'd,* 30 F.3d 1489 (3d Cir. 1994) (CID's purpose is to "enable the Government to determine whether enough evidence exist[s] to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily."); *see also In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19*, 1 F. Supp. 2d 587, 589 (E.D. Va.), *aff'd,* 182 F.R.D. 196 (E.D. Va. 1998) ("The issuance of a CID is a unique procedure almost, but not quite, akin to a grand jury investigation."). Particularly at the outset, investigators must cast a large net: "[A] wide range of investigation is necessary and appropriate where . . . multifaceted activities are involved, and the precise character of possible violations cannot be known in advance." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 877 (D.C. Cir. 1977). Agencies are thus afforded great latitude in gathering information by administrative subpoena, an allowance stemming from the government's unique, national role in policing federal-law violations.

      2.      Judicial review of an administrative subpoena is "sharply limited"

Courts cast a deferential eye toward agency subpoenas. "It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited." *Fla. Azalea Specialists*, 19 F.3d at 623 (citing *EEOC v. Kloster Cruise Ltd.,* 939 F.2d 920, 922 (11th Cir.1991)); *see also Markwood*, 48 F.3d at 976 (noting that "a district court's role in the enforcement of an administrative subpoena is a limited one"). In such proceedings, the court may inquire only as to whether (1) the administrative investigation is within the agency's authority, (2) the agency's demand is too indefinite, and (3) the information sought is reasonably relevant. *United States Equal Employment Opportunity Comm'n v. KB Staffing, LLC*, No. 8:14-MC-41-T-30AEP, 2014 WL 12628619, at *2 (M.D. Fla. Aug. 28, 2014) (citing *U.S. E.E.O.C. v.*

*Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996)); *see also Fla. Azalea Specialists*, 19 F.3d at 623 (quoting *Federal Election Commission v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284 (11th Cir. 1982)); *Morton Salt Co.*, 338 U.S. at 652. Generally, unless the subpoena was issued for some improper purpose that would abuse the court's process—such as harassment or bad faith—it should be enforced. *See United States v. Powell*, 379 U.S. 48, 58 (1964); *Markwood*, 48 F.3d at 978 (citing *United States v. LaSalle Nat'l Bank,* 437 U.S. 298 (1978)). The challenger bears a "heavy burden" of demonstrating such impropriety. *Markwood*, 48 F.3d at 978 (citation omitted). For enforcement of a CID, the DOJ must also show that it has complied with the procedural requirements for issuance set forth in the authorizing statute. *See Witmer*, 835 F. Supp. at 221.

As described above, the CID was properly issued within the DOJ's authority. The CID was issued in furtherance of an FCA investigation of Cross Senior Care. At no time has Cross Senior Care alleged that the DOJ issued the CID in bad faith or for an improper purpose. Nor does the company complain that Request No. 21 is indefinite; indeed, it has already collected and reviewed the emails at issue. The only issue, therefore, is whether the documents requested are "reasonably relevant" to the DOJ's investigation.

        3.    <u>A CID must be enforced if documents sought are "reasonably relevant" to the DOJ's investigation</u>

Under Eleventh Circuit law, "[t]he measure of relevance used in subpoena enforcement actions is quite broad," and the district court should enforce an administrative subpoena if the information sought is "reasonably relevant" to the investigation. *Fla. Azalea Specialists*, 19 F.3d at 624. As the *Markwood* court observed, the Supreme Court has said that administrative subpoenas should be enforced when "the evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of [its] duties."

48 F.3d at 977 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)); *see also*, *e.g.*, *E.E.O.C. v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) ("An administrative subpoena will be enforced, when challenged on the basis of relevancy, if the material subpoenaed touches a matter under investigation."); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one.").

In the CID context, "[r]elevancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *United States v. ASG Solutions Corp.*, 2018 WL 1418023 (S.D. Cal. Mar. 22, 2018). The disparate standards reflect the fundamentally different tasks in which the requesting parties are engaged: a civil litigant attempting to bolster (or refute) allegations of wrongdoing that have already been investigated and formally lodged on the one hand, federal law enforcement gathering materials "to inform itself as to whether there is probable violation of the law" before deciding whether to litigate at all on the other. *Morton Salt*, 338 U.S. at 643. Courts have thus "emphasized that administrative investigations could not be equated with the more constrained operations of the judicial process." *Fed. Election Comm'n v. Lance*, 617 F.2d 365, 369 (5th Cir. 1980), *supplemented*, 635 F.2d 1132 (5th Cir. 1981). In light of this difference, a district court will "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *Resolution Tr. Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (quotations omitted) (citation omitted).

> C. **The requested communications of three Cross Senior Care executives are relevant to the underlying False Claims Act investigation**

The DOJ is investigating whether Cross Senior Care, including its component facilities, knowingly submitted, or caused to be submitted, false claims to federal healthcare programs. The DOJ determined that the communications of the three Cross Senior Care employees listed in

Request No. 21 were highly relevant to its investigation of the company. In producing documents from the three custodians, however, Cross Senior Care adopted an unduly narrow interpretation of relevance, producing only communications relating to Medicare patients or services provided under the Medicare SNF benefit.

But an FCA investigation is not so narrowly constrained and involves many issues beyond the direct provision of services reimbursed by Medicare. The DOJ must also determine, for example, which individuals are responsible for submitting potentially false claims, setting corporate policies that may have led to the submission of false claims, or directing the actions of lower-level staff. Indeed, the United States provided fifteen examples to counsel for Cross Senior Care to explain how the requested communications may be relevant to the underlying FCA investigation, including operations, policies, practices, and structure of Cross Senior Care and its facilities. *See* Ex. 16. Cross Senior Care, while trying to frame the explanation of relevance as "new requests," concedes that all or nearly all of the withheld communications would be covered by these topics. *See* Ex. 17. Indeed, many of these areas of relevance overlap the other requests in CID No. 17-775, to which Cross Senior Care has not objected and has agreed to produce documents for other custodians.

The United States expects these communications to provide both direct and circumstantial evidence of, as well as necessary context for, the allegations under investigation. Subjects that the company now claims are irrelevant may in fact prove critical to the DOJ's investigatory task. Importantly, and core to the United States' investigation, the withheld communications likely provide insight and relevant evidence concerning which individuals control the operations at Cross Senior Care. This question is relevant to any False Claims Act investigation, but is particularly relevant here, where a web of corporate entities are associated

with each Cross facility and the United States must determine which entities and individuals may have submitted, or caused to be submitted, false claims. Here, the DOJ is investigating whether Cross Senior Care provided skilled nursing and rehabilitation services that were not reasonable and necessary. Communications between Cross, Plourde, and Fernandez and the outside company that provides rehabilitation services to patients at the Cross facilities are directly relevant to this investigation, even if those documents do not directly address the treatment of a Medicare patient. For example, the treatment of patients with private insurance at Cross facilities could be important when compared with that of public-program beneficiaries, as a disparity in treatment of similarly situated patients may speak to whether services provided to Medicare patients were reasonable and necessary. Likewise, documents involving patient complaints, audits, or training could all be relevant to determining the defendants' scienter or knowledge of the alleged fraud. All of these subjects, and more, are "reasonably relevant" to the investigation.

Moreover, in the interest of compromise, the government agreed that Cross Senior Care could remove any "purely personal" communications from its production. *Cf. In re McVane*, 44 F.3d 1127 (2d Cir. 1995) (ordering targets to turn over personal records but refusing to order production of personal records of non-target family members); *Resolution Tr. Corp. v. Walde*, 18 F.3d 943, 948 (D.C. Cir. 1994) (remanding to district court to consider whether alimony payments and other strictly private matters are relevant to investigation of failed savings-and-loan institutions).

While the government is not required to know with precision the value of each item it seeks at this early stage—after all, it "cannot be expected to ask only questions to which it already knows the answers," *Kloster Cruise*, 939 F.2d at 923—it is confident that the corporate

16

emails of these three executives will help the DOJ "determine whether enough evidence exist[s] to warrant the expense of filing [a civil] suit"—perhaps "prevent the potential Defendant from being dragged into court unnecessarily." *Witmer*, 835 F. Supp. at 211 (quotations omitted) (citation omitted).  Because these emails satisfy the broad relevancy standard applicable to agency investigations, Cross Senior Care should be ordered to produce them.

### D. Cross Senior Care failed to timely challenge the CID, waiving any objection to compliance

The False Claims Act requires that a person looking to modify or set aside a CID must file a petition to do so "within 20 days after the date of service" or within a longer period set forth in the demand.  31 U.S.C. § 3733(j)(2).  Cross Senior Care accepted service of the CID on December 13, 2017.  The company has never filed a petition to modify or set aside the demand.  The company has therefore waived its objection to any request in the CID.  It should be ordered to produce all communications responsive to Request No. 21 on this ground as well.

### Conclusion

For the foregoing reasons, the United States respectfully petitions this Court for an order compelling Cross Senior Care to produce all withheld non-privileged communications of Karl Cross, Joyce Plourde, and Margaret Fernandez (excluding those that may be "purely personal" in nature).

Dated: January 23, 2019

Respectfully submitted,

JOSEPH H. HUNT
ASSISTANT ATTORNEY GENERAL

MARIA CHAPA LOPEZ
United States Attorney

By: *for* /s/ Eric K. Gerard
Eric K. Gerard
Assistant United States Attorney
USA No. 168
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:   (813) 274-6358
E-mail:   eric.gerard@usdoj.gov

MICHAEL D. GRANSTON
ANDY MAO
SARAH M. ARNI
Attorneys, Civil Division
U.S. Department of Justice
175 N Street, NE
Washington, D.C. 20004
Tel: (202) 353-1233
Fax: (202) 305-4117
Email: Sarah.M.Arni@usdoj.gov

### L.R. 3.01(g) CERTIFICATION

I certify that I have conferred with counsel for Cross Senior Care, who oppose this petition.