# Exhibit 1

Civil Investigative Demand – Documentary Material

# United States Department of Justice
### Washington, D.C. 20530

TO:   Cross Senior Care Inc., LLC                Civil Investigative
      4700 Sheridan St, Ste. B                   Demand No. 17-775
      Hollywood, FL 33021

This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733, in the course of a False Claims Act investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that Cross Senior Care Inc., LLC, including its component skilled nursing facilities ("Cross Senior Care"), through its owners, officers, agents, and employees, billed the federal healthcare programs for skilled nursing and rehabilitation services that were not reasonable and necessary, resulting in the submission of false claims to government healthcare programs in violation of the False Claims Act.

This Demand requires Cross Senior Care (herein referred to as "you") to provide documents to the Federal Government. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## DOCUMENT REQUESTS

In accordance with the Definitions and Instructions set forth in **Attachment A**, you are required by this Demand to produce any and all of the following set forth in **Attachment C**.

You must make this material available to Sarah Arni, Trial Attorney, Civil Division, U.S. Department of Justice, and Jeremy Bloor, Assistant United States Attorney, Middle District of Florida, who have been designated as False Claims Act custodians in this case. If you have any questions, Ms. Arni may be contacted at (202) 353-1233, and Mr. Bloor may be contacted at (407) 648-7514.

These documents shall be produced **no later than thirty (30) days** from the receipt of this Demand, at the U.S. Department of Justice, Civil Division, Commercial Litigation Branch, 601 D Street NW, Room 9018, Washington, DC 20004, or at another location to be mutually agreed upon by you and the False Claims Act custodians noted above. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

Issued at Washington, D.C., this ___10th___ day of ___December___, 2017.


Michael D. Granston
Director
Commercial Litigation Branch
Civil Division

## ATTACHMENT A

### DEFINITIONS AND INSTRUCTIONS

A. **DEFINITIONS**

Unless otherwise provided for, the following terms shall have the meanings specified:

1.  "You," and "your" means the following: Cross Senior Care Inc., LLC ("Cross Senior Care"), including, but not limited to the following care homes: Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center. This includes, irrespective of any name under which any of the aforementioned have conducted business:

    a.  all of their predecessors, successors, parent organizations, subsidiaries, affiliates, branches, divisions, units, offices, facilities, locations, plants, and any joint ventures of which they are a part;

    b.  any and all entities that own the land or facilities from which the listed care home operate;

    c.  any and all entities that provide management services for the listed care homes; ands

    d.  each of their present or former respective officers, directors, employees, representatives, and agents, acting or purporting to act or appearing to act on behalf of it, whether or not acting within the proper scope of his or her actual authority.

2.  The term "document(s)" means any and all writings and recorded material in any form, including but not limited to, written, printed, typed, photographed, recorded, electronic, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds, or symbols, and any copies of documents, contemporaneously or subsequently created, which have any non-conforming notes or other markings, and the reverse side of any communication or representation which also contains any of the above.

    a.  By way of example, "document(s)" includes: ledgers, books of account, payroll ledgers, financial statements, checks, check stubs and registers, bank statements, wire transfers, powers of attorney, receipts, vouchers, invoices, journals, appointment books or calendars, diaries, reports, correspondence, notes, newsletters, memoranda, minutes of meetings, working papers, directives, manuals, contracts, charts, graphs, drawings, marketing materials, bulletins, training and compliance materials, and other materials stored in any data storage system. This also includes

electronic storage media, which incorporates items stored locally and on the "cloud," text/SMS messages, electronic mail, voicemail messages, facsimiles, videotapes, audiotapes, photographs, magnetic tapes, computer discs (including floppy disks, hard drives, hard disks, jump drives, flash memory devices, and writeable or recordable CDs and DVDs of all types), Personal Digital Assistants, cell phones, backup media, all programming instructions, record layouts, and other material necessary for the retrieval of all electronic or word processing material and printouts of data or information stored or maintained by electronic means.

b.  The term "document(s)" also includes preliminary drafts or revisions, any attachments or enclosures, as well as copies or duplicates that are not identical to the original because of additions, deletions, alterations, or notations.

3.  The term "correspondence" means transmittal of information (in the form of facts, ideas, inquiries or otherwise) between two or more persons.

4.  The term "communication" means any transmission or exchange of information between two or more persons, orally or in writing, and includes, without limitation, any conversation or discussion, whether face-to face or by means of telephone, facsimile, letter, notes of conversations, memorandum, text message, instant message, tweets, electronic posts, or electronic mail message of whatever type and description in your possession, custody, or control, however made, and includes all handwritten, typed, printed, recorded, transcribed, and taped writing or record of such communications.

5.  The terms "relate to" or "relating to" mean to make a statement about, refer to, discuss, describe, reflect, identify, deal with, or in any way pertain, in whole or in part, to the subject.  These terms include, without limitation, the synonyms pertaining, concerning, supporting, refuting, reflecting, describing, containing or connecting in any other manner to the matter described.

6.  The terms "or" and "and" are inclusive, referring to any one or more of the disjoined words or phrases, and "any" and "all" also include "each and every."

7.  All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tenses as well, and vice versa.

8.  The singular forms of a noun or pronoun shall be construed to include within its meaning the plural form of the word, and vice versa.

B.  **<u>INSTRUCTIONS</u>**

1.  <u>Time Period</u>:  Unless otherwise specified, this Demand refers to documents dated, created, revised, or in effect from **<u>January 1, 2006, through the date of issuance of the Civil Investigative Demand</u>** (Time Period), and shall include all documents that relate to such period even though prepared before or after such date.  Documents created prior to

January 1, 2006, that have been used or relied on by you since January 1, 2006, or that describe any duties, obligations, or policies that were in effect after January 1, 2006, are within the time frame of this Demand.

2. <u>Possession, Custody, and Control</u>:  Except as otherwise provided in the instructions (including, but not limited to the limitation contained in Instruction 6 with respect to privileges), this Demand requires the production of all documents responsive to one or more of the specifications set out below which are in the possession, custody, or your control, regardless of where located.

3. <u>Documents No Longer in Your Possession</u>: To the extent that documents responsive to this Demand once were, but no longer are, in your possession, custody, or control, this request requires production of all existing indices, lists, or documents in your possession, custody, or control that reflect the transfer or destruction of, or references to, such documents.

4. <u>Statement of "No Responsive Documents"</u>:  If no documents exist that are responsive to a specification, a written statement to that effect shall be provided at the time of production.

5. If you become aware that you possess, have custody or control of additional documents responsive to this Demand, you shall promptly produce such additional documents.

6. <u>Privilege</u>:  If you withhold any document on the ground of any privilege, you shall provide a log or index setting forth with particularity:

   a. The type of document (e.g., letter, memorandum, contract, etc.);
   b. The date of the document, if known;
   c. The title of the document;
   d. The name and address and position of the author of the document and of any person who assisted in its preparation;
   e. The name, address and position of all persons to whom the document or a copy of the document was sent;
   f. The number of pages;
   g. A brief description of the subject matter;
   h. The paragraph of the Demand to which it is responsive; and
   i. The factual and legal basis(es) for your claim of privilege or grounds for non-production asserted with respect to the document.
   j. The recommended formats for producing Privilege Logs are MS Excel or MS Access.  All documents determined by you to be privileged shall be identified in a manner agreed upon by the parties.

7. <u>Redaction</u>:  When a requested document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible.  If a

privilege is asserted with regard to a part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration. Any redaction must be clearly visible on the redacted document and marked accordingly (e.g., use of the word "REDACTION" within or adjacent to the redaction box).

8. <u>Organization of Documents Produced</u>: All documents produced pursuant to this Demand shall to be organized in such a manner that all documents relating to a particular specification are grouped together and identified as being responsive to that specification.

   All documents should be produced in the manner and format in which they are kept in the usual course of business. If documents are stored by you electronically, they should be produced in electronic format. If documents are stored in multiple formats, they should be produced in each format in which they are stored by you.

9. <u>Physically Stored Documents</u>: All documents provided in response to this Demand are to include all marginalia and post-its, as well as any attachments referred to or incorporated by the documents. All documents that contain handwriting, marginalia, or post-its shall be produced in color-scanned copies.

   To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in the same grouping.

10. <u>Electronically Stored Information</u>: The definition of "document," includes data stored in any electronic form. All responsive data that are stored electronically must be produced in an electronic format according to the instructions in Attachment B below (ESI Instructions).

11. <u>Non-Destruction</u>: No document called for by this Demand shall be destroyed, modified, redacted, removed, or otherwise made inaccessible, except insofar as documents are withheld under a claim of privilege in compliance with the instructions herein. Any decision by the United States to permit a partial or limited response to a request in the Demand is not a waiver of the request and does not extinguish your obligation to maintain and preserve all documents called for by the Demand.

12. <u>Transmittals</u>: All documents should be accompanied by a transmittal letter that includes (1) the Civil Investigative Demand number, (2) your name, (3) the date of production, (4) the paragraphs of the Demand to which the documents respond, and (5) the Bates range.

## ATTACHMENT B

**Instructions for Production of Electronically Stored Information (ESI) and Digitized Images ("Production Instructions")**

1.  **Specification Modifications**

    Any modifications or deviations from these ESI Instructions may be done only with the express permission of the Office of Inspector General ("OIG"). Any responsive data or documents that exist in locations or native forms not discussed in these ESI Instructions remain responsive and, therefore, arrangements should be made with the Department to facilitate their production.

2.  **Production Format of ESI and Imaged Hard Copy**

    Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 9-18, shall be rendered to type TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata (see section 3 below) shall be extracted and provided in Concordance® load file format.

    a.  **Image File Format:** All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Documents should be uniquely and sequentially Bates numbered with an endorsement burned into each image.

        i.   All TIFF file names shall include the unique Bates number burned into the image.

        ii.  Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.

        iii. All TIFF image files shall be stored with the ".tif" extension.

        iv.  Images should be able to be OCR'd using standard COTS products, such as LexisNexis LAW PreDiscovery™.

        v.   All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, should be delivered on a single piece of media.

        vi.  No image folder shall contain more than 2,000 images.

b. **Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the image file path for each Bates numbered page.

   i. Image Cross Reference Sample Format:

   ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,
   ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,
   ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,
   ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

c. **Concordance® Load File:** Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. The file should contain the required fields listed below in section 3.

   i. ASCII text delimited load files are defined using the following delimiters:

   | | |
   |---|---|
   | Field Separator | ^ or Code 094 |
   | Text Qualifier | \| or Code 124 |
   | Substitute Carriage Return or New Line | () or Code 013 |

   ii. The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.

   iii. There should be one line for every record in a collection.

   iv. The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), Document ID, Document Date, File Name, and a Title, then the structure may appear as follows:

   |BEGDOC#|^|ENDDOC#|^|DOCID|^|DOCDATE|^|FILENAME|^|TITLE|

   v. The extracted/OCR text for each document should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

3. **Required Metadata/Database Fields**

   a. A "✓" denotes that the indicated field should be present in the load file produced.

   b. "Other ESI" includes non-email or hard copy documents, including but not limited to data discussed in sections 6-9, and 12-18 below.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| COMPANY | Company/Organization submitting data | Full Text | Unlimited | ✓ | ✓ | ✓ |
| BOX# | Submission/volume/box number | Note Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Note Text | 160 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Note Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Note Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Integer | 10 | ✓ | ✓ | ✓ |
| PARENTID | Parent's DOCID or Parent's Start Bates (for EVERY document including all Child documents) | Note Text | 60 | ✓ | ✓ | ✓ |
| ATTACHIDs | Child document list; Child DOCID or Child Start Bates | Multi-Entry | 60 | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment Bates numbers | Multi Entry | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Note Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| RECORD TYPE | File, E-mail, Attachment, or Hard Copy | Note Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name | Note Text | 160 | | ✓ | ✓ |
| TO | Recipient- format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Multi-Entry | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject/Document Title | Note Text | Unlimited | | ✓ | ✓ |
| DOCDATE | Document Date/Date Sent - Format MM/DD/YYYY | Date Keyed | MM/DD/YYYY | | | ✓ |
| BODY | E-mail body, Other Electronic Document Extracted text, or OCR | Full Text | Unlimited | ✓ | ✓ | ✓ |
| TIMESENT | Time e-mail was sent | Time | 10 | | ✓ | |
| DATECRTD | Date Created | Date | MM/DD/YYYY | | ✓ | ✓ |
| DATESVD | Date Saved | Date | MM/DD/YYYY | | ✓ | ✓ |
| DATEMOD | Date Last Modified | Date Keyed | MM/DD/YYYY | | ✓ | ✓ |
| DATERCVD | Date Received | Date | MM/DD/YYYY | | ✓ | |
| DATEACCD | Date Accessed | Date | MM/DD/YYYY | | ✓ | ✓ |
| FILESIZE | File Size | Note Text | 10 | | | ✓ |
| FILENAME | File name - name of file as it appeared in its original location | Full Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Note Text | 160 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Full Text | Unlimited | | ✓ | ✓ |
| NATIVELINK | Current file path location to the native file | Full Text | Unlimited | | ✓ | ✓ |
| FOLDERID | E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. Folder or binder name) | Full Text | Unlimited | ✓ | ✓ | |
| PARAGRAPH | Demand/request paragraph number to which the document is responsive | Multi-Entry | Unlimited | ✓ | ✓ | ✓ |
| HASH | Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Note Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | Email header. Can contain IP address | Full Text | Unlimited | | ✓ | |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-Mail | Other ESI |
|---|---|---|---|---|---|---|
| ATTACHMCOUNT | Number of attachments to an email | Note Text | 10 | | ✓ | |
| FILETYPE | Identifies the application that created the file | Note Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Note Text | 10 | | ✓ | ✓ |

4. **De-duplication, Near-Duplicate Identification, Email Conversation Threading and Other Culling Procedures**

De-duplication of exact copies within a custodian's data may be done, but all "filepaths" must be provided for each duplicate document. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of OIG. All objective coding (e.g., near dupe ID or e-mail thread ID) shall be discussed and produced to OIG as additional metadata fields.

5. **Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

6. **Embedded Files**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

7. **Image-Only Files**

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool [and other] screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

8. **Hard Copy Records**

   a. All hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID). Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder.) The first document in the collection represents the parent document and all other documents will represent the children.

    b.  All documents shall be produced in black and white TIFF format unless the image requires color.  An image "requires color" when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

    c.  All objective coding (e.g., document date or document author) should be discussed and produced to OIG as additional metadata/database fields.

**9.    Production of Spreadsheets and Presentation Files**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format). *See* section 18 below.  The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

**10.    Production of Email Repositories**

Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks etc.  For purposes of production, responsive items shall include the "Email" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email or other items) with the parent/child relationship preserved. Email databases from operating systems other than Microsoft Exchange shall be produced after consultation with and written consent of OIG about the format for the production of such databases.

**11.    Production of Items Originally Generated in E-Mail Repositories but Found and Collected Outside of Email Repositories, i.e., "Stand-alone" Items**

Any parent email or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of email repositories (e.g., items having extensions like .MSG, .HTM, .MHT, etc.), shall be produced items with the "Email" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

**12.    Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, voicemail messaging data, instant messaging, text messaging, conference call data and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of OIG about the format for the production of such data.

**13.    Productions of Structured Data**

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be provided in native Excel (.xls) format.

**14.      Productions of Structured Data from Proprietary Applications**

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database. The list of reports shall be produced in native Excel (.xls) format.

**15.      Production of Photographs with Native File or Digitized ESI**

Photographs shall be produced as single-page .JPG files with a resolution equivalent to the original image as it was captured/created.     All .JPG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

**16.      Images from which Text Cannot be OCR Converted**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images.  The report shall include the electronic Bates, document id or Bates number(s) corresponding to each such image.

**17.      Format of ESI from Non-PC or Windows-based Systems**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes and UNIX machines), the ESI shall be produced after discussion with and written consent of OIG about the format for the production of such data.

**18.      Production of Native Files (When Applicable Pursuant to These Specifications)**

Productions of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

    a.  ESI shall be produced in a manner which is functionally useable by OIG.  The following are examples:

        i.  AutoCAD data, e.g., .DWG, .DXF, shall be processed/converted and produced as single-page .JPG image files and accompanied by a Concordance® Image formatted load as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

        ii.  GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

iii. Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

19. **Bates Number Convention**

All images should be assigned Bates numbers before production to OIG. The numbers should be "endorsed" (or "burned in") on the actual images. Native files should be assigned a single bates number for the entire file. The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique name/number common to each page (when assigned to an image) or to each document (when assigned to a native file). If OIG agrees to a rolling production, the naming/numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

PREFIX0000001          PREFIX0000003
PREFIX0000001.001      PREFIX0000003.001
PREFIX0000001.002      PREFIX0000003.002

20. **Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

a. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications.

b. External hard drives, USB 2.0 (or better) or eSATA, formatted to NTFS format specifications.

c. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

d. Media should be labeled with the case name, production date, Bates range, and producing party.

21. **Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to OIG. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of OIG.

22. **Compliance and Adherence to Generally Accepted Technical Standards**

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National

Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

23.    **Read Me Text File**
All deliverables shall include a read me text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

24.    **Exception Log**
An Exception Log shall be included documenting any production anomalies utilizing by the electronic Bates number (document id or control numbering) assigned during the collection, processing and production phases.

# ATTACHMENT C

1.  Documents sufficient to identify the management and ownership of Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and Cross Shores Care Center, and all organizational charts.

2.  Documents sufficient to identify all employees of Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and Cross Shores Care Center, including but not limited to consultants, contractors, student interns, or other parties identified in Paragraph 1 of "Definitions." Your response should include, but is not limited to, each employee's name; current employment status; position and title; reason for departure or termination, if any; last known address; telephone number, both home and cell; social security number; and state licensing number. In lieu of these documents you may produce a chart setting forth this information.

3.  Documents sufficient to identify all parties who provided or assisted with therapy services at Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center. This request includes but is not limited to Directors of Therapy, therapists, therapy assistants, therapy technicians, and student therapists.

4.  All documents that discuss, describe, refer to, or evidence any contracts relating to the provision of rehabilitation services at Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center, including, but not limited to, any documents regarding Reliant Rehabilitation and/or Functional Pathways of Tennessee.

5.      All materials provided to new employees, consultants, contractors, student interns, or other parties identified in Paragraph 1 of "Definitions," including but not limited to handbooks and PowerPoint presentations.

6.      All documents, including but not limited to, communications (including any communications between Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and Cross Shores Care Center), presentations, instructions, directives, or training materials that discuss, describe, refer to or evidence the following subjects:

     a)      documentation for rehabilitation and RUG Codes;

     b)      methods or approaches for scoring Activities of Daily Living (ADLs) and assigning rehabilitation and RUG codes;

     c)      determinations of length of stay for patients;

     d)      methods or approaches for completing resident Minimum Data Set (MDS) assessments;

     e)      reimbursement for therapy services;

     f)      decisions to admit patients to, and discharge patients from, therapy services, and;

     g)      any type of compensation related to therapy services, RUG levels, therapy minutes, or census.

7.      All documents that discuss, describe, refer to, or evidence compliance audits, internal reviews (including but not limited to mock surveys), probe audits, or other evaluations or assessments of the billing, coding, charging, charting, or performance or delivery of any therapy service at Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center, and any response to any such audit, review, or other evaluation or assessment.

8.      All documents that discuss, describe, refer to, or evidence any complaints, concerns, or

problems from any resident, residents' family or guardian, employee, therapist, or contractor regarding therapy services, therapy minutes, the use of RUG codes, or length of stay at Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center, including but not limited to resignation letters and exit interviews.

9.     All documents that discuss, describe, refer to, or evidence goals, quotas, targets, productivity requirements or expectations, or budgets relating to RUGs, therapy minutes, length of stay, or census, including but not limited to the process for determining such goals, targets or budgets, for Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center.

10.     All documents that discuss, describe, refer to, or evidence the tracking or recording of length of stay and/or days remaining under the Medicare skilled nursing benefit for patients of Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and/or Cross Shores Care Center.

11.     All documents that discuss, describe, refer to, or evidence any bonuses or incentives offered to any employee or contractor of Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, or Cross Shores Care Center, including but not limited to, any bonuses or compensation related in any way to therapy or rehabilitation services, admissions or referrals of patients, length of stay, or patient census.

12.     Recordings, minutes, agendas, notes, handouts, or other distributions from any meetings or conference calls during which RUGs, therapy, length of stay, or census was discussed, including but not limited to discharge planning meetings or therapy team conferences.

13.   All documentation used to track patients, including all utilization reports.

14.   All documents that discuss, describe, refer to, or evidence any complaints, grievances, appeals, or lawsuits relating to any resident or the care provided by Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and Cross Shores Care Center.  This includes but is not limited to, complaints and grievances lodged by governmental entities, state or federal regulators and any third parties.

15.   All documentation used by Cross Senior Care to track and/or compare each skilled nursing facility owned and/or operated by it, including but not limited to emails, memos, graphs, charts, Excel spreadsheets, and matrices.

16.   All documents that discuss, describe, refer to, or evidence the method by which therapy minutes were determined for patients receiving therapy services at Cross Senior Care, Cross Pointe Care Center, The Crossings a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and Cross Shores Care Center.

17.   All documents that discuss, describe, refer to, or evidence any instructions, training, guidance, requirements, or any other documentation related to the use of modalities in therapy to increase therapy time and/or permit therapists to document therapy or otherwise complete other activities during therapy.

18.   All documents that discuss, describe, refer to, or evidence any instructions, training, guidance, requirements, or any other documentation related to the activities that can be included in billable therapy time.

19.   All performance reviews, assessments, and evaluations of all therapists, therapy assistants, therapy technicians, and student therapists, Directors of Rehabilitation, Regional Directors of Rehabilitation, and Facility Administrators.

20.   All documents that discuss, describe, refer to, or evidence all medical directors or consultants affiliated with Cross Senior Care, Cross Pointe Care Center, The Crossings

a/k/a Crossings Retirement Home, The Crossroads a/k/a Crossroads Retirement Home, Cross Terrace Rehabilitation Center a/k/a Cross Terrace Care Center, Crosswinds Health and Rehabilitation Center, Cross Landings Health and Rehabilitation Center, Crossbreeze Care Center, Cross Gardens Care Center, Cross Care Center, Crossview Care Center, and Cross Shores Care Center.   In lieu of these documents you may produce a chart setting forth this information, to include each director's or consultant's full name, address, telephone number, the time period for each affiliation, a description of the services that the medical director or consultant provided, and the rate of compensation paid to each.

21.    All communications, including, but not limited to, email communications and text messages, involving Karl Cross, Joyce Plourde, and/or Margaret Hernandez.

22.    A copy of your document retention policy.  If no such policy exists, documents sufficient to show the manner in which you retained and/or disposed of documents.

## FORM OF CERTIFICATE OF COMPLIANCE[1]

I have responsibility for producing the documents requested in Civil Investigative Demand No. 17-775.  I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature _____

Title      _____

**SWORN TO** before me this _____ day of

_____, 2017

_____
NOTARY PUBLIC

---

[1]    In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

## <u>VERIFIED RETURN OF SERVICE</u>

I,_____, an employee of the United States working under the direction and supervision of attorneys Sarah Arni and Jeremy Bloor in connection with a false claims law investigation, hereby certify that at the time of _____, on the_____day of _____, 2017, I personally served Civil Investigative Demand No. 17-775 on _____, by delivering_____an executed copy of such Demand at:

_____

_____

_____

I declare under penalty of perjury that the foregoing is true and correct. Executed on this _____day of _____, 2017.

Signature_____

Title_____